# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| PAMELA WEST | § | PLAINTIFF |
| | § | |
| VS. | § | CAUSE NO. 1:09cv295-LG-RHW |
| | § | |
| NATIONWIDE TRUSTEE SERVICES, | § | |
| INC., and CHASE MANHATTAN | § | |
| MORTGAGE CORP., CA | § | DEFENDANTS |

## ORDER DENYING MOTIONS TO DISMISS

BEFORE THE COURT IS Defendant Chase Home Finance, LLC's[1] Motion to Dismiss [7] and Defendant Nationwide Trustee Services, Inc.'s ("Nationwide Trustee") Motion to Dismiss [12]. Plaintiff Pamela West initiated this action to enjoin foreclosure on her homestead, for an accounting and declaratory judgment with respect to her mortgages, and for damages. Chase argues that she has failed to state a claim for which relief can be granted because she has not set forth any legal theory. Nationwide Trustee filed a joinder which relies on Chase's arguments. The Court has considered the parties' submissions and the relevant legal authority. Both motions are denied.

## FACTS AND PROCEDURAL HISTORY

According to the First Amended Complaint, West owned a home in Bay St. Louis, Mississippi. On the home were a mortgage and a home equity line of credit, originally totaling $328,000. Both were serviced by Chase. The home was insured by Nationwide Insurance Company ("Nationwide Insurance").

---

[1]Chase states that it is the successor in interest to Chase Manhattan Mortgage Corp., incorrectly identified in the First Amended Complaint as Chase Manhattan Mortgage Corp., CA.

West alleges that, on August 29, 2005, Hurricane Katrina destroyed her home, leaving only the front steps. She notified Chase that her home was completely destroyed. When Nationwide Insurance refused to pay, she sued it in state court. That litigation is still pending. Subsequently, on August 30, 2007, Nationwide Insurance tendered a $47,188.16 check made payable to her, her attorneys, the Small Business Administration, and Chase.

West alleges that for two years, she made efforts to tender to Chase these insurance proceeds, less attorney fees, to satisfy a portion of her home loan. In the meantime, she continued to make her monthly payments on the loans, but notified Chase that she would no longer be able to keep this up. She continued to ask Chase to accept this partial prepayment and use it to reduce her monthly payments. According to West, Chase did not communicate with her regarding this offer. She alleges that despite her repeated offers to make payment with the insurance proceeds she eventually fell behind in her payments and incurred late fees.

Further, the complaint allegations, construed liberally in Plaintiff's favor, indicate that Chase insisted that she pay the entire $47,000 to Chase and that it would apply the money to rebuild the house over time, contrary to an alleged policy of allowing homeowners to retain the first $20,000 of insurance funds for themselves. West objected on this basis, and, because, among other things, there was no "possibility that Ms. West could rebuild her home with this amount." (1st Am. Compl. Ex. C). The Deed of Trust on the mortgage provides in part:

> Unless Lender and Borrower otherwise agree in writing, any insurance proceeds . . . shall be applied to restoration . . . of the property, if the restoration . . . is economically feasible. . . . If the restoration or repair is not economically feasible . . . the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

(Chase's Mot. Dismiss Ex. B at 6-7). Two months later Chase responded by telephone and was

once again informed that "repairs were not feasible." West provided documentation in support of her assertion. (1st Am. Compl. Ex. E). Chase was also advised that the insurance check would be stale at the end of February 2008. On February 15, 2008, Chase sent her instructions on how to prepay the mortgage in full, not prepay it in part. A few days later, Nationwide Trustee sent a collection letter on behalf of Chase. West then tried to communicate with both Chase and Nationwide Trustee to avoid foreclosure, request an accurate accounting, and to become current on her mortgage. According to West, but both Defendants ignored her.

Shortly before the scheduled foreclosure sale, West filed this action in Hancock County Chancery Court to enjoin the foreclosure, declare the rights of the parties under the loans, require an accounting and for damages. She was granted a Temporary Restraining Order. On the day before the Chancery Court was to hear her motion for a preliminary injunction, Chase removed the action to this Court.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, West must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). This does "not require heightened fact pleading of specifics." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965. The Court must view the facts in favor of the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

3

which it rests.' *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (quoting *Bell Atlantic*, 127 S. Ct. at 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

CHASE

Chase argues that the First Amended Complaint fails to state a claim because it does not identify any legal theory. West responds that the First Amended Complaint states claims for declaratory judgment on the loans, negligence, breach of good faith and fair dealing, and wrongful foreclosure.

First, Chase did not respond to the claims for declaratory judgment. West alleges that she has two loan agreements, over which there is a dispute as to how much she owes, and she seeks a declaration of her rights and duties under those agreements so she may comply with those agreements.

Additionally, the First Amended Complaint provides that Defendants repeatedly failed to accurately account to West for those sums that would bring her current on the mortgage despite her requests for this information, failed to offer alternative methods to become current on the mortgage, and that Chase wrongfully caused the default. For this, she seeks to require an accounting, to have the scheduled foreclosure enjoined pending an accurate accounting, and for any damages as a result of this failure to account.

Mississippi law recognizes a cause of action for wrongful foreclosure. *Eastover Bank for Savs. v. Hall*, 587 So. 2d 266, 267 (Miss. 1991). According to the Mississippi Supreme Court:

> A mortgagor is entitled to recover damages for a wrongful or fraudulent foreclosure of the mortgage, as where an unlawful foreclosure is attempted solely from a malicious desire to injure the mortgagor; or he may recover damages where the foreclosure is conducted negligently or in bad faith, to his detriment.

*Nat'l Mortgage Co. v. Williams*, 357 So. 2d 934, 935-96 (Miss. 1978). The mortgagor may recover damages or have the foreclosure set aside. *Id.* at 936. "Punitive damages have also been allowed where the foreclosure was found to have been pursued with malice." *Id.*

A mortgagee such as Chase has a duty to account to the mortgagor West for the amount it would take to bring the loan current before Chase can foreclose on the property. *Nat'l Mortgage*, 357 So. 2d at 937. Failure to do so will constitute a wrongful foreclosure. *Id.*

For example, the *National Mortgage* court affirmed actual and punitive damages on two wrongful foreclosures. *Id.* at 934. The first foreclosure was wrongful, because the mortgagor was actually not in default at the time. *Id.* at 937. This foreclosure was set aside by the chancellor. *Id.* Started days after the first foreclosure was set aside, the second was wrongful, in part, because National Mortgage did not provide Williams with an accounting of the sum actually due. *Id.* "Although National notified Williams . . . that she could pay the total delinquency, plus trustees' fees and publication costs and stop the second foreclosure, no amounts of installments, trustees' fees and publication costs were given to her. Neither was any accounting made to her nor any method of payment suggested." *Id.*

Likewise, West has alleged that Chase has failed to accurately account for the amount currently due which will prevent the foreclosure and failed to suggest any method of payment it will accept. The Court must accept this allegation as true. As the case law confers these duties upon Chase, she has stated a claim against Chase for which relief can be granted for wrongful foreclosure.

Additionally, the First Amended Complaint, read liberally and in the light most favorable to West, alleges that Chase engaged in unconscionable conduct which caused her to default.

Where the defendant either caused the default or has done some act that would make it unconscionable for defendant to take advantage of the default, then the plaintiff has a claim for wrongful foreclosure. *Id.* at 937; *Johnson v. Gore*, 80 So. 2d 731, 736 (Miss. 1955). West alleges that it was not feasible to rebuild her home with the insurance proceeds, Chase knew she lost all of her belongings and home and her insurer was denying further liability, it was allegedly Chase's policy to allow homeowners to retain the first $20,000 of Katrina insurance proceeds, and she told Chase that she would be in danger of default if they did not apply these funds to the loans. Despite this, Chase allegedly would not accept these funds and apply them toward her mortgage balance. In the mean time, the amount owed on the loans allegedly increased as late fees and penalties were assessed. After she defaulted, Chase allegedly refused to render an accurate accounting, allow her to apply the insurance proceeds to bring the loan current or in partial prepayment of her loans, or suggest an alternative.

At this stage, the Court must accept the First Amended Complaint as true and view it in the light most favorable to West. Under this standard, she has stated a claim for declaratory judgment and wrongful foreclosure against Chase. Whether or not she will ultimately prevail or be able to prove these allegations is not an issue before the Court at this time. The Court need not consider whether the other allegations state a claim. At a minimum, West has stated the above claims upon which relief can be granted against Chase.

NATIONWIDE TRUSTEE

Nationwide Trustee filed a joinder to Chase's motion which complains that the First Amended Complaint does not set forth any legal theory. In rebuttal, Nationwide Trustee argues that the wrongful foreclosure claim should be dismissed against it because there are no

6

allegations of unconscionable conduct by Nationwide Trustee.

The First Amended Complaint alleges that Nationwide Trustee sent the first collection letter indicating that it may institute foreclosure proceedings and asking West to call Nationwide Trustee to find out the amount needed to prevent foreclosure. West alleges that she did call but "did not receive assistance regarding [her offer] to bring the loan current with the insurance proceeds. Unable to make contact with Nationwide concerning its threatened actions," she wrote Chase. (1st Am. Compl. at 4 (¶¶8-9)). When she received a second collection letter from Nationwide Trustee, she wrote back explaining her situation and her offer to resolve the matter. Further, she notified Nationwide Trustee of the dispute and her need for an accounting. She "has on more than one occasion, presented to [Nationwide Trustee] both the method and funding mechanism by which to become current on her mortgage." *Id.* at 5 (¶14). Nevertheless, Nationwide Trustee failed to respond. Instead, it noticed the foreclosure sale. West instituted this action to enjoin the sale pending an accurate accounting and for damages.

When these allegations are accepted as true and viewed in the light most favorable to West, she has alleged unconscionable conduct against Nationwide Trustee in its attempts to foreclose her property. Nationwide Trustee knew her home was totally destroyed in Hurricane Katrina and knew that she was requesting an accounting and disputing the sums needed to become current on the mortgage. Nationwide Trustee knew that she was willing to become current on the mortgage, and yet Nationwide Trustee would not respond to her multiple attempts to request an accounting or satisfy the debt it was purportedly attempting to collect.

Nationwide Trustee has not shown it is entitled to dismissal. Again, the Court makes no judgment on the merits of West's claims against Nationwide Trustee.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Chase Home Finance, LLC's [7] Motion to Dismiss should be and is hereby **DENIED.**

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendant Nationwide Trustee Services, Inc.'s [12] Motion to Dismiss should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 4th day of December, 2009.

                                            s/ *Louis Guirola, Jr.*
                                            LOUIS GUIROLA, JR.
                                            UNITED STATES DISTRICT JUDGE