UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAMELA WEST | § | PLAINTIFF |
| | § | |
| VS. | § | CAUSE NO. 1:09cv295-LG-RHW |
| | § | |
| NATIONWIDE TRUSTEE SERVICES, | § | |
| INC., and CHASE MANHATTAN | § | |
| MORTGAGE CORP., CA | § | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER
## DENYING PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is Counter Claimant Chase Home Finance, LLC's[1] Motion for Partial Summary Judgment [27]. Plaintiff Pamela West initiated this action to enjoin an alleged wrongful foreclosure on her homestead, for an accounting and declaratory judgment with respect to her mortgages, and for damages. Chase countersued for declaratory judgment, breach of contract, and conversion. Chase argues it is entitled to partial summary judgment on the Amended Counterclaim, because (1) she did not pay Chase her Mississippi Windstorm Underwriting Association (MWUA) check, (2) she did not pay Chase her Nationwide Insurance Company ("Nationwide Insurance") check, and (3) she is not entitled to deduct attorney fees from either one of these checks nor any future insurance proceeds she may recover. The Court has considered the parties' submissions and the relevant legal authority. The motion is denied.

### FACTS AND PROCEDURAL HISTORY

West owned a three story, 5,000 square foot home in Bay St. Louis, Mississippi, overlooking the Bay of St. Louis. She lived in this home with her three children. She took out a

---

[1]Chase states that it is the successor in interest to Chase Manhattan Mortgage Corp., incorrectly identified in the First Amended Complaint as Chase Manhattan Mortgage Corp., CA.

mortgage with Whitney National Bank for $143,000 on August 27, 2003. In July of 2005, she took out a home equity line of credit for $185,000 with J.P. Morgan Chase, in order to open her own business. Chase was the servicer of both loans. She insured her home with MWUA and Nationwide Insurance. She also insured the family's contents and loss of use with Nationwide Insurance.

On August 29, 2005, Hurricane Katrina destroyed West's home and all of her family's possessions inside. All that remained were the front steps, a tree in her swimming pool, broken pieces of glass, and her grandmother's pearls, which West re-strung. She filed claims with both of her insurers. MWUA determined the cost to rebuild her home would be $451,610.59, and 50 percent of the damage was caused by wind. Because MWUA did not insure her contents, it did not determine that loss. Therefore, in December, MWUA issued a check for policy limits of $206,400, made payable to her and Whitney. She and Whitney both endorsed this check but it is not clear what happened to it after that. Nationwide Insurance, on the other hand, denied her claim.

On May 9, 2007, West sued Nationwide Insurance and her insurance agent in state court to recover for her home, contents, loss of use, and punitive and extra-contractual damages. That suit is currently scheduled for trial. On August 30, Nationwide Insurance mailed West a check for $47,188.16 made payable to her, the Small Business Administration, and Chase. She contacted Chase to find out how it wanted to handle these funds, but it did not respond. A month later, she proposed that she would deduct about $12,000 in attorneys fees and give the rest to Chase to apply in prepayment of both her mortgages and that Chase would then reduce her monthly payments on each loan. Chase did not accept her proposal and ultimately instituted

foreclosure on the first mortgage.

After West instituted the present action for, *inter alia*, wrongful foreclosure, Chase filed an Amended Counterclaim for breach of contract, conversion, and declaratory judgment. Chase seeks the two insurance checks as well as any future recovery from West's state court litigation. Chase also seeks punitive damages, attorney fees, and other damages associated with loss of the MWUA check.

## DISCUSSION

S<span style="font-variant:small-caps">tandard for</span> M<span style="font-variant:small-caps">otion for</span> S<span style="font-variant:small-caps">ummary</span> J<span style="font-variant:small-caps">udgment</span> P<span style="font-variant:small-caps">ursuant to</span> R<span style="font-variant:small-caps">ule</span> 56:

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F<span style="font-variant:small-caps">ed</span>. R. C<span style="font-variant:small-caps">iv</span>. P. 56. To make this determination, the Court must view the evidence in the light most favorable to the non-moving party. *Abarca v. Metro. Transit. Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). A "material fact" is one that might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute about a material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* The party that bears the burden of proof at trial also bears the burden of proof at the summary judgment stage. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986). "[W]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon . . . mere allegations or denials . . . but . . . must set forth specific facts showing that there is a genuine issue for trial." F<span style="font-variant:small-caps">ed</span>. R. C<span style="font-variant:small-caps">iv</span>. P. 56(e).

Chase seeks partial summary judgment on its Amended Counterclaim and argues it is

3

entitled to the full amount of the MWUA and Nationwide Insurance checks and any future checks awarded to West in her state court litigation.

MWUA CHECK

Chase first argues that West breached the first deed of trust contract and committed conversion when she did not give Chase the MWUA check. West responds that these claims are barred by the statute of limitations, and Chase did not have an interest in the check.

I. CONVERSION

Conversion is subject to the general three year statute of limitations. Miss. Code Ann. § 15-1-49; *First Bank v. E. Livestock Co.*, 886 F. Supp. 1328, 1330 (S.D. Miss. 1995). In a conversion action, the statute of limitations begins to run when the goods are tortiously taken. *Wilder v. St. Joseph Hosp.*, 82 So. 2d 651, 652 (Miss. 1955). "[I]t is immaterial whether the owner knew of the conversion or not, if no fraud is practiced to prevent his knowledge." *Id.* West maintains that the period began to run when the check was posted into an account on February 2, 2006, and Chase does not take issue with this. Thus, the statute of limitations on the conversion claim began to accrue on this date. The Amended Counterclaim, which raised the conversion claim for the first time, was not filed until August 4, 2009. Therefore, the conversion claim is untimely.

However, Chase argues that the discovery rule tolls the statute of limitations. The "discovery rule is inapplicable in actions involving conversion of negotiable instruments unless the defendant asserting the statute of limitations is involved in the fraudulent concealment." *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 148 (¶16) (Miss. 1998). This rule applies in any conversion case. *Wilder*, 82 So. 2d at 652. Chase's knowledge is immaterial if

4

West did not fraudulently conceal the cause of action. *Id.* Chase does not argue fraudulent concealment. Therefore, Chase has not shown it is entitled to summary judgment on the conversion claim.

## II. BREACH OF CONTRACT

The Court will assume that this breach of contract claim is timely. To prove its breach of contract counterclaim, Chase must prove by a preponderance of the evidence (1) the existence of a valid and enforceable contract between Chase and West, (2) that she breached the contract, and (3) the breach caused Chase to suffer monetary damages. *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992).

The first loan was originally between West and Whitney. The first loan contract read that Whitney "may transfer this note." (Reardon Aff. Ex. 1 at 1). This loan further provided that it was secured by a Deed of Trust. On the same day as the loan was executed[2], there is a Notice of Assignment, Sale, or Transfer of Servicing Rights between Whitney and West. This provides:

> the servicing of your mortgage loan, that is, the right to collect payment from you, is being assigned to Chase Manhattan Mortgage Corporation, effective 08/27/03. This . . . transfer of servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

(Chase's Mot. Summ. J. Ex. B). The Deed of Trust also is between Whitney and West, and no mention is made there of Chase. Instead, the Deed of Trust reads that the deed is transferred to MERS. "'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns." (Reardon Aff. Ex. 2 at 2). MERS transferred the Deed of Trust to Chase on October 26, 2008.

---

[2]Although the notice is undated, the parties agree it was executed on this date.

This indicates that when the MWUA check was issued and presented to Whitney, Chase did not have an interest in it under the first deed of trust. Rather MERS "solely as nominee" of Whitney did. The first deed of trust provides that insurance proceeds, such as the MWUA check, will be given to the lender to either pay the loan or to rebuild the property. The check was presented to Whitney, and it endorsed the check. It is unclear what happened to the check after this. There is evidence that it was deposited into an unidentified account. When asked if West cashed it, she testified yes. In either case, it was presented to Whitney, who at that time owned the contractual right to the proceeds. Thus, there is no evidence that she breached the first deed of trust with respect to the MWUA check. Chase has failed to demonstrate it is entitled to summary judgment on this claim.

<u>Nationwide Insurance Proceeds</u>

### I. $47,188.16

Chase argues that West breached the first deed of trust and committed conversion when she failed to tender the Nationwide Insurance check to Chase. It also asks the Court to declare that Chase is entitled to the full amount of this check. Although Chase did not own this deed of trust when the Nationwide Insurance check was issued, it does now.

#### A. <u>Breach of Contract</u>

The first Deed of Trust gives Chase a security interest in West's home. The deed requires insurance to cover the home. Any "insurance proceeds" referred to in the deed refer to those proceeds that covered the home itself. Nationwide Insurance insured more than just West's home; it insured her contents and loss of use. There is no evidence on what this check represents, other than West's testimony that it was not for living expenses. Therefore there is no

6

evidence from which the Court can conclude that Chase is entitled to the Nationwide Insurance check, nor that West breached the contract. Chase has not demonstrated it is entitled to judgment as a matter of law on the breach of contract claim for the $47,188.16 check.

    B.    CONVERSION

To prove its counterclaim for conversion, Chase must prove "a wrongful possession, or the exercise of a dominion in exclusion of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Smith*, 726 So. 2d at 149 (¶20). In other words, one of the things Chase must prove to prevail on its conversion claim is Chase's ownership of the Nationwide Insurance check. For the reasons set forth above, Chase has not shown it owns these proceeds. Moreover, for this same reason, Chase has failed to negate West's right to own the proceeds. Therefore, Chase has not demonstrated a lack of genuine issue of fact as to the conversion claim based on the $47,188.16 check.

    II.    ANY FUTURE PROCEEDS FROM THE STATE COURT LITIGATION

Finally, Chase argues that it is entitled to summary judgment on its declaratory judgment claim. Specifically, Chase maintains that it is entitled to all future proceeds recovered in the West's state court litigation against Nationwide Insurance under the insurance proceeds clause in the first deed of trust. In the state court litigation, she seeks more than just insurance proceeds on her dwelling. She seeks, among other things, punitive damages, extra-contractual damages, and insurance proceeds on her loss of use and on her family's contents. Thus, any recovery she makes may possibly include more than just recovery for the damages to her dwelling itself. Chase has not shown it is entitled to summary judgment on all future proceeds from the state court litigation.

**IT IS THEREFORE ORDERED AND ADJUDGED** that for the reasons stated above, Defendant Chase Home Finance, LLC's [27] Motion for Partial Summary Judgment should be and is hereby **DENIED.**

**SO ORDERED AND ADJUDGED** this the 16th day of December, 2009.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE